UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 1:07-CR-96 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| TRACY FEAGAN | ) | |

**MEMORANDUM**

Defendant Tracy Feagan ("Defendant") filed a motion to suppress the fruits of the search of 2237 6th Street NW, Birmingham, Alabama (Court File No. 108), and to suppress his August 25, 2007 statement (Court File No. 116). Magistrate Judge Susan K. Lee conducted a hearing on these motions (*see* Court File No. 166), and subsequently issued a report and recommendation ("R&R"), denying both (Court File No. 171). Defendant filed a timely objection to the R&R (Court File No. 175). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 171) and will **DENY** Defendant's motion to suppress the fruits of the search (Court File No. 108) and motion to suppress the statement (Court File No. 116).

I.      FACTS

The R&R provides considerable detail as to the surrounding facts involved in this matter, and those facts need not be repeated here (Court File No. 171). The facts as pertinent to Defendant's objections are more fully discussed below.

## II.    STANDARD OF REVIEW

In reviewing the R&R of a magistrate judge, the district court judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III.    DISCUSSION

### A.    Search of 2237 6th Street NW, Birmingham, Alabama

Defendant moves the Court to suppress the fruits of the search of his residence, arguing (1) probable cause did not exist to support a search warrant, in violation of the Fourth Amendment of the United States Constitution, and, (2) if probable cause did not exist, the shortcoming is not excused by the good faith exception, based upon the officer's reasonable belief of the sufficiency of the evidence (Court File No. 108). In accordance with the following, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 171), and will **DENY** Defendant's motion to suppress the fruits of the search (Court File No. 108).

#### 1.    Probable Cause Existed

The R&R contains an impressively-thorough review of the jurisprudence of the United States Court of Appeals for the Sixth Circuit in regard to the Fourth Amendment, probable cause, and residential searches (*see* Court File No. 171, unnumbered pp. 10-13). Defendant does not dispute the accuracy of that review of the law, but argues the R&R is incorrect in its factual finding that the

2

evidence available in the affidavit supporting the search warrant was sufficient to meet that legal standard (*see* Court File No. 175).

The Court adopts the legal review in the R&R, and will briefly summarize it here (*see* Court File No. 171, unnumbered pp. 10-13). Under the Fourth Amendment, a search warrant can only be issued when the provided facts indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). These facts must establish a nexus between the residence and the evidence sought, and not merely establish that the owner of the residence is suspected of a crime. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), *cert. denied*, 543 U.S. 851 (2004); *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003), *cert. denied*, 540 U.S. 912 (2003). Where the facts provided to support the search warrant are supplied by an informant whose reliability has not been established, those facts must contain "substantial independent police corroboration." *Frazier*, 423 F.3d at 532.

In relation to residential searches of alleged drug dealers, the Sixth Circuit has repeatedly held probable cause exists where (a) the facts demonstrate the defendant conducts a continual and ongoing drug operation, and (b) an officer, through his experience, observes such drug dealers often keep drugs or items related to drug activity in their homes (*see* Court File No. 171, unnumbered pp. 11-13) (citing, e.g., *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000), *cert. denied*, 531 U.S. 880 (2000); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998); *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996)).

Defendant argues, at best, the government's evidence only establishes that Defendant "attempted to make a drug purchase on one occasion," and thus fails to demonstrate Defendant

3

conducted a continual and ongoing drug operation (Court File No. 176, p. 2).[1]  This Court, as did

the R&R, rejects this characterization of the evidence (*see* Court File No. 171, unnumbered pp. 13-

15).  An unidentified informant, referred to as a  source of information ("SOI"), informed police

authorities that he had made several deliveries of two to ten kilograms of cocaine to Defendant

(Court File No. 108, Attachment 1).  This statement was corroborated by the subsequent behavior

of Defendant, as observed by police officers.  First, the SOI telephoned Defendant, asking if he

needed anything; Defendant responded that he "would take his normal ten kilograms" (*id.*).  This

language is indicative of multiple, past drug deliveries.

 Second, the SOI told Defendant of a specific meeting place to provide the drugs; Defendant

waited at that place, but left shortly afterwards, informing the SOI that there were two police

surveillance vehicles present (*id.*).  This indicates Defendant had experience in detecting and

avoiding police surveillance during drug buys.

Third, Defendant, upon arriving at the second drop point, fled from police officers when

approached and refused to stop (*id.*).  However, the vehicle in which Defendant fled was discovered

abandoned shortly afterwards; police authorities found a note addressed to Defendant and three

cellular telephones, one of which had been used previously to call the SOI (*id.*).  This provides

support for Defendant possessing both the car and the cell phones; cellular telephones, as was done

here, are often utilized to conduct drug activities (*id.*).

Ultimately, the SOI's statements and the corroborating circumstances provide sufficient

---

[1]The affidavit here contains the assertion by an experienced drug enforcement agent that drug
dealers often keep drugs and items relating to drug distribution activity in their homes (Court File
No. 108, Attachment 1).  Defendant raises no objection to the sufficiency of that general
representation (*see* Court File Nos. 108, 109).

4

evidence that Defendant was involved in ongoing and continuous drug distribution activities. Most notably, the SOI informed police authorities that Defendant had purchased two to ten kilograms of cocaine from him on several occasions; when Defendant was telephoned, Defendant stated he wanted his "normal" delivery of ten kilograms (*id.*). In light of this information, the Court will **ACCEPT** and **ADOPT** the factual findings and conclusion of the R&R (Court File No. 171, unnumbered pp. 10-15), and will **DENY** Defendant's motion to suppress the fruits of the search (Court File No. 108).

### 2. Good Faith Exception

Because this Court has determined sufficient probable cause existed to support the search warrant, the applicability of the good faith exception is moot.[2]

### B. Defendant's statement of August 25, 2007

Defendant moves the Court to suppress his statement made to Task Force Agent Joshua Melton of the Chattanooga Resident Office of the Drug Enforcement Administration ("Melton") on August 25, 2007, concerning his involvement in illicit drug transactions (Court File No. 116), based upon his rights under the Fifth and Sixth Amendments. In accordance with the following, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 171), and will **DENY** Defendant's motion to suppress his August 25, 2007 statement (Court File No. 116).

### 1. Fifth Amendment

The Fifth Amendment protects a person from being compelled to incriminate himself. *See,*

---

[2]However, having reviewed the R&R, the officer's affidavit, the accompanying briefs on the issue, and Defendant's objection to the R&R, the Court will **ACCEPT** and **ADOPT** the factual findings and conclusions of the R&R in relation to the good faith exception (Court File No. 171, unnumbered pp. 15-17), as an alternative holding, which would also provide sufficient grounds to deny Defendant's motion to suppress the fruits of the search (Court File No. 108).

*e.g.*, *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Because of the pressures and psychological stress exerted on those in custody, officers of the law are required to adequately and effectively apprise such individuals of their rights and must fully honor their decision should they seek counsel before answering questions. *Id.* If an individual agrees to answer questions without counsel, the officer can then question the individual freely. *Davis v. United States*, 512 U.S. 452, 458 (1994). However, if the individual requests counsel, at any time, the officer must cease his questioning and wait until the individual's lawyer is present. *Id.* Once the individual requests counsel, he cannot be questioned again while in custody on any offense. *Id.* However, "[t]he mere fact that the government is aware that a suspect has an attorney, or is soon to have one, does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation." *United States v. Suarez*, 263 F.3d 468, 483 (6th Cir. 2001) (*citing McNeil v. Wisconsin*, 501 U.S. 171, 177-182 (1991)).

Here, according to Defendant, on August 25, 2007, Melton interviewed Defendant while Defendant was in custody (Court File No. 117, p. 3). In his interview with Melton, Defendant provided an extensive, detailed account of his involvement, as well as the involvement of many others, in drug trafficking and distribution activities (*see* Report of Investigation, Court File No. 116, Attachment 1). At the end of the interview, Defendant signed a "Rights Waiver" which waived Defendant's Fifth and Sixth Amendment rights to counsel and to avoid self-incrimination (*see* Court File No. 117, p. 3).

Defendant asserts his Fifth Amendment right to avoid self-incrimination was violated, because although he was read his *Miranda* rights and signed a waiver of those rights, Defendant asserts he was deceived when he did so (Court File No. 117, p. 4). This argument draws upon

6

language in *Moran v. Burbine*:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

475 U.S. 412, 421 (1986) (citing *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

Defendant alleges Melton assured him the conversation would not be recorded and was "off the record" (Court File No. 117, pp. 3, 5). Defendant also alleges he refused to sign the "Rights Waiver" at the beginning of the interview, and only signed it at the end because he believed Melton had agreed to maintaining the conversation "off the record," and thus Defendant's statements would not be used against him (*id.*). Defendant also alleges that Melton took "only a few hand-written notes during [Defendant's] Statement," which Defendant argues reaffirmed his understanding that the conversation was "off the record" (*id.*, p. 5).

Aside from these bare allegations, Defendant has provided no evidence to support his deception claim (*see* Court File No. 171, unnumbered p. 18). Melton testified that Defendant was advised of his rights and waived those rights several times prior to, during, and after the interview (*id.*). Melton further testified that at no time did he imply the conversation was "off the record," and "specifically indicated that anything that defendant said could be used against him" (Court File No. 120, p. 4).

In addition to Melton's direct testimony, the surrounding evidence provided to the Court does not support Defendant's claim of deception. Defendant claims Melton took "only a few hand-written notes," which Defendant argues corroborates his belief his statements were "off the record"

7

(Court File No. 117, p. 5). Neither characterization provides support for Defendant's deception claim. First, Melton taking *any* notes would not be indicative of a conversation completely "off the record." Second, Melton's report is a ten-page, detailed account of drug trafficking and distribution, which includes names, dates, drug and currency amounts, and a ten-digit cell phone number (Court File No. 116, Attachment 1). Indeed, Defendant characterizes the report as providing "in-depth detail of the conversation from August 25" (Court File No. 117, p. 3). Such detail would have required Melton to take a considerable amount of notes during his conversation with Defendant, which is not consistent with a conversation purely "off the record."

Defendant has put forth no evidence to support his deception claim, and the evidence in the record is not consistent with such a claim. As such, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 171, unnumbered pp. 17-18), and will **DENY** Defendant's motion to suppress his August 25, 2007 statement based upon the Fifth Amendment (Court File No. 116).

### 2. Sixth Amendment

The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defense." U.S. Constitution. amend. VI. A defendant's Sixth Amendment right to counsel attaches when prosecution commences, *Michigan v. Jackson*, 475 U.S. 625, 629 (1986), as had occurred here at the time of Defendant's conversation with Melton (*see* Court File No. 117, pp. 5-6). However, a defendant can waive his Sixth Amendment right to counsel at this time where he (1) initiates the conversation, and (2) waives that right. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983); *United States v. Mills*, 1 F.3d 141, 418 (6th Cir. 1993). The question is "whether a valid waiver of the right to counsel and the right to silence

8

had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities" and that "determination depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Bradshaw*, 462 U.S. at 1046 (citations omitted).

Here, Melton testified Defendant initiated the conversation, inquiring whether Melton wished to speak with him and stating he had something to tell Melton (Court File Nos. 120, p. 4; 171,unnumbered p. 20). Furthermore, as discussed above, Melton was informed of his right to counsel and waived that right (*see* Court File Nos. 120, p. 4; 171, unnumbered p. 18). Defendant has provided no evidence to the contrary (*see* Court File No. 117, pp. 5-7).[3] As such, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 171, pp. 18-20), and will **DENY** Defendant's motion to suppress his August 25, 2007 statement based upon the Sixth

---

[3]In objecting to the R&R, Defendant specifically objects to the magistrate judge's failure "to address the unwitting persuasion Magistrate Judge Carter exerted on Defendant Feagan when he suggested that cooperation can lead to a reduced sentence" at Defendant's initial appearance (Court File No. 175, p. 2). Defendant alleges that he was pressured into cooperating, because government agents encouraged him to do so, then Magistrate Judge Carter informed him he might benefit from it (Court File No. 176, pp. 3-4).

Defendant does not appear to contest that he initiated the conversation or waived his right in relation to his Sixth Amendment argument (*see* Court File No. 176, pp. 3-4), thus satisfying the standard in *Bradshaw*. 462 U.S. at 1046. However, Defendant argues he was somehow compelled to initiate the conversation because the government had told him his "window of opportunity" to cooperate would eventually close (*see* Court File No. 176, p. 3). Defendant cites no authority recognizing such an exception to the standard stated in *Bradshaw*. Even if such an exception existed, Defendant has failed to provide sufficient evidence here to demonstrate such extreme coercion.

Ultimately, as Defendant concedes, Magistrate Judge Carter informed Defendant of his right to counsel and to consult with counsel (Court File No. 117, p. 6). Defendant was given ample opportunity to exercise his Sixth Amendment right to counsel prior to speaking with Melton and chose not to do so.

9

Amendment (Court File No. 116).

## IV.     CONCLUSION

For the reasons stated above, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 171), and will **DENY** Defendant's motion to suppress the fruits of the search at 2237 6th Street NW, Birmingham, Alabama (Court File Nos. 108), and motion to suppress his August 25, 2007 statement (Court File Nos. 116).

An Order shall enter.


**/s/**

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**